UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:10-CV-00005

JAMES CHRISTOPHER BIDWELL
and SUSAN WILSON                                                            PLAINTIFFS

v.

UNIVERSITY MEDIAL CENTER, INC., et al.                                     DEFENDANTS

MEMORANDUM OPINION

This matter is before the Court upon Defendants Lincoln Retirement Services Company, LLC's ("Lincoln") and University Medical Center's ("UMC") Motions for Judgment on the Administrative Record (DN 28; DN 30). Plaintiffs filed a Brief in support of their Claims, which the Court will construe as a Motion for Judgment as well (DN 29). The parties have responded to these motions (DN 31; DN 32; DN 33), and they are now ripe for adjudication. For the reasons that follow, Defendants' Motions for Judgment (DN 28; DN 30) are GRANTED.

BACKGROUND

This case arises from a breach of fiduciary duty claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). Plaintiffs James C. Bidwell and Susan Wilson (collectively "Plaintiffs) were employees in UMC's emergency room and as part of an emergency flight crew for a combined total of forty years. During their employment, Plaintiffs participated in the University Hospital Retirement Plan and the University Hospital 403(b) Plan (collectively "Plans"). According to Plaintiffs, each affirmatively elected to invest the total of their accounts in the Lincoln Stable Value Fund ("SVF"). SVF was also the Qualified Default Investment Alternative ("QDIA"), which is the investment vehicle for plan

participants who do not choose an investment option when opening an account. Administrative Record ("AR") at 227, 314.

In 2007, the Department of Labor ("DOL") promulgated new regulations governing QDIAs. The regulations set forth that SVF would no longer be permitted as a QDIA, and instead the DOL encouraged that participating investment plans have QDIAs that were focused on long-term investment appreciation rather than low-yield stability. In compliance with these changes, the Plans altered their default investment vehicle from SVF to Life Span time-based Asset Allocation Model ("LSA"). AR at 590. UMC admits that in instituting these changes to the Plans "it was not possible for them to determine who had invested in the [SVF] by specific election versus a default" election. DN 30-1 at 2-3; AR at 590.

On June 16, 2008, a notice was mailed to Plaintiffs, as well as all of the other participants in the Plans, indicating that their funds in SVF would be reinvested in LSA unless Plaintiffs specifically elected to keep their present allocation (the "Notice"). AR at 436-45. Lincoln was tasked with sending out the Notices to the Plans' participants. Defendants claim that despite sending Notices to the addresses provided by Plaintiffs that urged them to respond, neither notified the Plans, UMC, nor Lincoln about their desire to maintain their investment in SVF. *Id*. at 590-91. For their part, Plaintiffs claim that neither received the Notice and that had they known of the election, they would have reinvested the entirety of their accounts in SVF. *Id*. at 613, 620. On July 17, 2008, without word from either, the funds in Plaintiffs' accounts were transferred from SVF to LSA. *Id*. at 590.

Plaintiffs claim that only in October of 2008, after receiving their quarterly statements from the Plans, did they discover the change to their investment portfolio. *Id*. at 613, 620. Both

2

immediately switched their investments back to SVF, but they allege that in those three months each of their accounts experienced significant financial losses.[1]  Subsequently, Plaintiffs pursued administrative remedies against UMC, all of which were denied as Plaintiffs had been previously informed of the changes to their accounts, and the Notices sent by Lincoln were in compliance with the applicable DOL regulations.  This action was then brought in January of 2010, seeking compensation for the losses suffered in their retirement accounts, lost income, costs, and attorney fees.  On November 9, 2010, the Court denied Plaintiffs' Motion for Additional Discovery, DN 26, and shortly thereafter ordered the current briefing.  DN 27.  The parties now move for Judgment on the Administrative Record.

**STANDARD**

Claims for breaches of fiduciary duty under ERISA are reviewed *de novo* by the district court, as they are not claims for denial of benefits.  *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006) (citation omitted).  The district court is not required to provide deference to any of the administrator's actions or prior decisions.  *Id*.

**ANALYSIS**

**I. Lincoln is not a fiduciary under the Plans**

Plaintiffs allege in their complaint that "Defendant breached its fiduciary duty to the Plaintiffs to administer investments according to the instructions of the participants."[2]  DN 1 at 5.

---

[1] Bidwell claims that he lost $85,000.00 while Wilson claims a loss of $16,900.00.  DN 29 at 6.

[2] In their joint Complaint, Plaintiffs do not specify to which Defendant they are referring to in this statement.  While the Court believes it to be UMC and not Lincoln, for the purposes of this motion it will assume momentarily that Plaintiffs in fact alleged in this pleading that Lincoln was a fiduciary for the Plans.

3

Lincoln argues however that it is entitled to judgment because it is not a fiduciary under ERISA.[3] While Plaintiffs raise a number of arguments contesting the overall administration of the Plans, they concede that Lincoln's "role in this transaction was not fiduciary in nature." DN 33 at 3.

ERISA allows a participant in a covered plan to bring a private right of action "against a person that qualifies as a fiduciary" and breaches of that duty under the plan's terms. 29 U.S.C.§ 1132(a)(3); *see Allinder v. Inter-City Products Corp.*, 152 F.3d 544, 551 (6th Cir. 1998), *cert. denied* 525 U.S. 1178 (1999). Who qualifies as an ERISA fiduciary can be determined in one of two ways: the plan can designate an individual/entity as a fiduciary, or the individual/entity can "exercise[] discretionary control or authority over the plan's management, administration or assets.'" *Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. of Mich.*, 139 F.3d 546, 549 (6th Cir. 1998) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)). With regard to the latter category, typically a third party may be a fiduciary where it administers claims and maintains sole authority to grant or deny claims. *Briscoe v. Fine*, 444 F.3d 478, 489 (6th Cir. 2006) (citing *Libby-Owens-Ford Co. v. Blue Cross & Blue Shield Mutual of Ohio (BCBSM)*, 982 F.2d 1031, 1034-35 (6th Cir. 1993). ERISA helps to define who is a fiduciary in 29 U.S.C. § 1002(21)(A), stating that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority

---

[3] Lincoln also moves for judgment on the administrative record since the denial of Plaintiffs' claims were not arbitrary and capricious and the Defendants did not violate the procedural rights of Plaintiffs during the administrative process. As the Court has found, and as all parties concede, that Lincoln is not a fiduciary, examination of these arguments is unnecessary.

discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Upon review of the administrative record, the Court agrees that Lincoln fails to satisfy any possible definition of fiduciary. The Plans do not mention Lincoln as a fiduciary. *See* AR at 227, 314. It is further undisputed that Lincoln did not exercise authority in deciding to divest Plaintiffs from SVF; instead it merely mailed the Notice at the behest of the Plans' administrators. The Court further agrees with Lincoln's interpretation of its activities as ministerial rather than discretionary, a distinction that this and other circuits have embraced in ERISA actions. *Flacche v. Sun Life Assur. Co. of Canada*, 958 F.2d 730, 735 (6th Cir. 1992) (finding that mere payment of a claim does not equate to "discretionary control" a plan); *Anoka Orthopaedic Associates, P.A. v. Lechner*, 910 F.2d 514, 517-18 (8th Cir. 1990) (certain ministerial tasks do not make a firm a fiduciary). Considering the current characterization of Lincoln's responsibilities, along with Plaintiffs' concession that it did not exercise fiduciary authority under the Plans, the Court finds that Plaintiffs have not stated a legitimate basis for recovery in their Complaint against Lincoln. Accordingly, Lincoln's motion for Judgment on the Administrative Record is granted.

## II. UMC did not violate its fiduciary duties under the Plans' language

UMC sets forth a more complex argument as to why it is entitled to judgment on the administrative record. It states first that under DOL regulations, a plan administrator is permitted to transfer a participant's funds from one investment to another if the participant has failed to provide specific directions about his or her investments. UMC next charges that the Notice procedures it followed were reasonably calculated to apprise Plaintiffs of the changes to

5

the Plans. Combining these two assertions, that UMC had the discretion to change Plaintiffs' investments in the face of their silence and its notice procedure complied with DOL's requirements, UMC concludes it did not breach its fiduciary duty in divesting Plaintiffs from SVF in their accounts.

In attacking this motion, it appears that Plaintiffs supply three arguments in support. First, they claim that UMC's decision to transfer Plaintiffs' investment funds from SVF to LSA was in direct contradiction to the Summary Plan Descriptions provided to Plaintiffs before they decided to participate in the Plans. Plaintiffs thus state that this behavior was a violation of UMC's fiduciary duties as administrator. Second, Plaintiffs assert that the Plans have forfeited certain regulatory protections, specifically the safe harbor under 29 C.F.R. § 2550.404c-5, because it has failed to abide by the mandated conditions in the DOL's regulations. Finally, Plaintiffs say that as any questions about whether they originally elected to be invested in SVF or defaulted into the fund should be resolved in their favor, UMC was without authority to alter their prior investment decision without directly contacting them.

Section 404(a)(1) of ERISA sets out the primary duties of a fiduciary as follows:

> (1) act solely in the interest of plan participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries; (2) act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; (3) diversify the investments of a plan so as to minimize the risk of large losses; and (4) act in accordance with the documents and instruments governing the plan insofar as they are consistent with the provisions of Titles I and IV of ERISA.

*Hollowell v. Cincinnati Ventilating Co., Inc.*, 711 F. Supp. 2d 751, 769-70 (E.D. Ky. 2010) (citing 29 U.S.C. § 1104). "To prevail on a breach-of-fiduciary-duty claim under ERISA, a plaintiff must generally prove that the defendant not only breached its fiduciary duty but also

caused harm by that breach." *Romberio v. Unumprovident Corp.*, 385 F. App'x. 423, 428-29 (6th Cir. 2009) (citing *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995)). Participants in covered plans are permitted to enforce the liability provisions of ERISA with regard to investment plans and breaches of fiduciary duties. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008); *Falcone v. DLA Piper U.S. LLP Profit Sharing & 401(k) Sav. Plan Comm.*, No. C 09-5555, 2010 WL 2280543, at *6-7 (N.D. Cal. June 7, 2010).

In examining UMC's argument,[4] it is first instructive to explore the safe harbor that plan administrators are provided under § 2550.404c-5. Subsection (b)(1) sets out the safe harbor as follows:

> [A] fiduciary of an individual account plan that permits participants or beneficiaries to direct the investment of assets in their accounts and that meets the conditions of paragraph (c) of this section shall not be liable for any loss, or by reason of any breach under part 4 of title I of ERISA, that is the direct and necessary result of (i) investing all or part of a participant's or beneficiary's account in any qualified default investment alternative within the meaning of paragraph (e) of this section, or (ii) investment decisions made by the entity described in paragraph (e)(3) of this section in connection with the management of a qualified default investment alternative.

29 C.F.R. § 2550.404c-5(b)(1). Subsection (c) of the same regulation details the six conditions by which plans must abide to qualify for the safe harbor: (1) the participant's assets are invested in a QDIA; (2) the participant is provided notice about the QDIA; (3) the participant is provided certain information about the QDIA; (4) the participant may alter his investment allocation, in its entirety or in part, from the QDIA to another investment alternative at least quarterly; (5) the participant is given the option of a broad range of investment alternatives; and (6) the participant had the opportunity to direct the investment of the assets in their account but failed to do so. *Id.* at § 2550.404c-5(c)(1)-(6).

---

[4] It is undisputed that UMC is a fiduciary as envisioned by ERISA's statutory scheme.

The Court next turns to the specific regulations governing this last requirement, whether the participant could have directed their investment but instead defaulted into the QDIA. The DOL's regulations sought to describe the process by which plans could alter the participants' investments in the absence of specific direction. Default Investment Alternatives Under Participant Directed Individual Account Plans, 72 Fed. Reg. 60452 (Oct. 24, 2007) (codified at 29 C.F.R. Part 2550). The initial summary of this regulation described its purpose:

> This document contains a final regulation . . . under which a participant in a participant directed individual account pension plan will be deemed to have exercised control over assets in his or her account if, in the absence of investment directions from the participant, the plan invests in a qualified default investment alternative. A fiduciary of a plan that complies with this final regulation will not be liable for any loss, or by reason of any breach, that occurs as a result of such investments.

*Id*. The rules and regulations also describe the notice requirements whereby a plan may act upon a participant's inaction and still meet the safe harbor requirements:

> To ensure that an existing or a new default investment constitutes a qualified default investment alternative with respect to both existing assets and new contributions of participants or beneficiaries, plan fiduciaries must comply with the notice requirements of the regulation. It is the view of the [DOL] that any participant or beneficiary, following receipt of a notice in accordance with the requirements of this regulation, may be treated as failing to give investment direction for purposes of paragraph (c)(2) of § 2550.404c-5, without regard to whether the participant or beneficiary was defaulted into or elected to invest in the original default investment vehicle of the plan. Under such circumstances, and assuming all other conditions of the regulation are satisfied, fiduciaries would obtain relief with respect to investments on behalf of those participants and beneficiaries in existing or new default investments that constitute qualified default investment alternatives.

*Id*. Applying the aforementioned passages to the instant matter, UMC was permitted to send the Notice to the Plans' participants and without any reply, direct their investments to an appropriate QDIA, while still successfully qualifying for § 2550.404c-5's safe harbor.

Plaintiffs' first argument confronts the discrepancies between the plain language of the

Summary Plan Description for the Plans ("SPD") and the actions of UMC as the Plans' administrator. The SPD of each plan contains language indicating that once a participant has made an affirmative election of a particular investment, the original election "shall control until a new election is made."[5] AR at 591. Plaintiffs state that these sections of the SPDs should have guided UMC's actions, and thus the unilateral transfer of their funds between the investment vehicles was a breach of the administrator's fiduciary duty. They also cite a number of cases standing for the proposition that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988) (citation omitted).

Using the express language of the SPD as well as the Plans' governing documents, UMC

---

[5] Section 9.5(a) of the University Hospital Retirement Plan's SPD is as follows:

> Any participant may be written notice to the administrator allocate her Account for investment purposes among various directed funds designated by the Trustee ("Directed Fund"). The Participant's election may be made telephonically through any means approved by the Administrator, and a Participant may make an election separately with respect to existing balances and future contributions to the Participant's Account. All elections shall control until a new election is made. If no election is made, the Trustee shall designate how the Participant's Account shall be invested amount the Directed Funds.

AR at 591; 645. The University Hospital 403(b) Plan's SPD contains the following language in Section 9.11:

> Any Participant may be written notice to the Administrator allocate her Account for investment purposes among various directed funds designated by the Administrator ("Directed Fund"). The Participant's election may be made telephonically through any means approved by the Administrator, and a Participant may make an election separately with respect to existing balances and future contributions to the Participant's Account. All elections shall control until a new election is made. If not election is made, the Administrator shall designate how the Participant's Account shall be invested among the Directed Funds.

*Id*.

9

makes two points in supporting the reallocation of the Plaintiffs' accounts. UMC initially points to language contained within the SPD that indicates that it is subordinate to the Plans' governing documents,[6] which in turn provides the administrator discretion to contravene the language of the SPD. It then cites provisions in the same documents that ostensibly supply the administrator with "robust power," allowing for the conclusion that the administrator's powers were broad enough to divest the Plaintiffs from their investments to "bring[] the Plan into compliance with federal law." DN 32 at 3-4. Next, UMC charges that the same sections cited by Plaintiffs in these documents provide the administrator the express authority to choose a participant's investment where they fail to make an affirmative election. AR at 308-09; 591.[7]

The Court finds that UMC was vested with the power to alter Plaintiffs' previous investment decision. The Plans set out that a participant's failure to make an affirmative investment election would result in the direction of their accounts into the QDIA. AR at 308-09. They also stated that occasionally, participants would be required to make investment decisions. Specifically, the governing documents provide that:

> Each Participant shall have the right, and shall be obligated to direct the investment of the assets of his or her Plan Accounts in the investment funds available from time to time under the annuity contracts and custodian accounts that compromise the Fund.

AR at 307. Such language unambiguously describes the power of UMC to administer Plaintiffs' accounts and alter their prior selections in the face of inaction. This passage also shows that

---

[6] On the first page of the SPD appears the following phrase in bold letters: "IF THERE ARE ANY INCONSISTENCIES BETWEEN THIS BOOKLET AND THE LEGAL DOCUMENT, THE LEGAL DOCUMENT GOVERNS. AR at 336.

[7] This provision is contained in the governing documents for both Plans, section 9.5 of the Retirement Plan and section 9.11 of the 403(b) Plan. AR at 591, 645.

despite any initial election by Plaintiffs, such a decision could be revisited at UMC's discretion. *Id*. When considering that the administrator's actions were predicated upon and within the parameters of the Plans' governing documents, the Court does not believe that it was in breach of its fiduciary duties.

These above referenced sections are also congruous with the requirements of section 2550.404c-5's safe harbor. The language of the regulation provides protection for plan fiduciaries where "the participant or beneficiary on whose behalf the investment is made had the opportunity to direct the investment of the assets in his or her account but did not direct the investment of the assets." 29 C.F.R. § 2550.404c-5(c)(2). In this matter, Plaintiffs were updated about changes to the Plans' QDIA through a targeted mailing and provided an opportunity to direct their investment. Indeed, while Plaintiffs state that they never received the Notices mailed by Lincoln, they no longer contest that UMC or Lincoln failed to abide by the notice provision of ERISA when they informed the Plans' participants of the changes to the QDIA.[8] *See* 29 C.F.R. § 2520.104b-1(b). With Plaintiffs' month-long silence, UMC was able to direct their assets to the new QDIA and still abide with the DOL's regulatory safe harbor. Since compliance with this safe harbor means that a fiduciary "shall not be liable for any loss, or by reason of any breach under part 4 of title I of ERISA," 29 C.F.R. § 2550.404c-5(b)(1), Plaintiffs are unable to recover for the investments losses their accounts sustained.

Even setting aside these two findings, the Court believes that UMC made a reasonable interpretation of the Plans' documents in light of the DOL regulations. Courts have consistently

---

[8] Even supposing that Plaintiffs did contest the notice procedure of Lincoln and UMC, the Court has reviewed the requirements under § 2520.104b-1(b) and the process employed in this matter; it finds that Lincoln and UMC complied with all of its applicable provisions.

held that fiduciaries of an ERISA plan may reasonably interpret its governing documents. *Senzarin v. Abbott Severance Pay Plan for Emps. of KOS Pharm.*, 361 F. App'x. 636, 640 (6th Cir. 2010); *Edwards v. Wilkes-Barre Pub. Co. Pension Trust*, 757 F.2d 52, 57 (3rd Cir. 1985); *Tomlin v. Bd. of Trs.*, 586 F.2d 148, 151 (9th Cir. 1978). Fiduciaries may exercise their power to interpret so long as their decisions are not arbitrary or capricious. *Moench v. Robertson*, 62 F.3d 553, 567-68 (3d Cir. 1995); *Ershick v. United Mo. Bank of Kansas City, N.A.*, 948 F.2d 660, 666 (10th Cir. 1991); *Thompson v. Asbestos Workers Local No. 53 Pension Fund*, 554 F. Supp. 296, 300 (M.D. La. 1983). In reviewing the background of this matter, it cannot be said that UMC breached its fiduciary duties by ignoring the language in the SPD's. To be sure, there existed some divergence in the DOL regulations governing QDIAs, the language of the Plans' governing documents, and the actions of the Plans' administrators. The provisions of the SPD set forth that Plaintiffs' election of SVF would be honored until "a new election [was] made." The administrative record however is clear that, in transferring the participants' funds from SVF to LSA, UMC relied upon the sections in the governing documents that allowed for designation of the participant's investments if no election was made, AR at 589, 645-48, and that these sections were interpreted with an eye toward compliance with the DOL regulations. *Id*. That UMC was unable to determine who had specifically chosen to invest in SVF was unfortunate; however, this ignorance by itself is not a breach of its fiduciary duties.[9] As the DOL regulations did not offer guidance on the particular scenario with which UMC was confronted, it chose to contact the

---

[9] In addressing UMC's inability to determine who had defaulted into SVF versus who had affirmatively elected the investment, Plaintiffs ignore that UMC was given authority under the Plans and ERISA's regulations to ameliorate such a predicament through a direct mailing to the Plans' participants. The Court finds that UMC took the appropriate steps to correct this earlier oversight through the issued Notice and thus it is not liable in this matter for its prior ignorance.

12

participants directly with the Notices, asking them to elect (or reelect in Plaintiffs' case) SVF as their investment preference. UMC did not arbitrarily or capriciously exercise its discretionary authority to transfer Plaintiffs' retirement funds between investments. Instead, UMC construed certain provisions of the governing documents[10] and only acted after first attempting to contact Plaintiffs by through the notice that was sent in accord with the notice provisions of ERISA. *See* 29 C.F.R. § 2520.104b-1(b). Under these circumstances, the Court is incapable of finding that UMC breached its fiduciary duties.

In dispensing with the other arguments advanced by Plaintiffs, the Court is able to draw upon the above-state conclusions. UMC has not forfeited its safe harbor protections under § 2550.404c-5, since the changes to Plaintiffs' investment account were effectuated only after a reasonable interpretation of the Plans' documents, the mandated notice procedure, and in response to changes in the DOL's QDIA regulations. Thus the Court finds that UMC did not depart from § 2550.404c-5 or breach its fiduciary duties. Next, while Plaintiffs urge the Court to construe the present issues in their favor, this would run counter to the prior stated legal precedent: "[j]udicial review of fiduciary actions is highly deferential." *Ershick*, 948 F.2d at 666 (citing *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir. 1985)). As such, the Court cannot agree with this contention by Plaintiffs.

In closing, the Court would like to specifically address and reject a final argument by Plaintiffs. In their reply, they correctly note that the same DOL regulations that encouraged ERISA Plans to alter their current QDIAs also contained a provision that grand-fathered the SVF chosen by the Plaintiffs into the newly approved investment vehicles if the decision had been

---

[10] "If no election is made, the Administrator shall designate how the Participant's Account shall be invested among the Directed Funds." AR at 309.

made by the plan's participants prior to December 24, 2007.  *See* 29 C.F.R. § 2550.404c-5(e)(4)(v)(B).  Since Plaintiffs invested in the SVF long before 2007, they aver that UMC "was not constrained from allowing [them] to maintain their previously elected investment vehicles." DN 33 at 3.  However, this argument ignores that § 2550.404c-5(e)(4)(v)(B) does not *require* ERISA plans to maintain funds previously invested in QDIAs prior to the above-stated date; it simply provides statutory cover for those plans who choose to leave participants' investments in earlier QDIAs.  Accordingly, the decision to depart from § 2550.404c-5(e)(4)(v)(B) was not a violation of the regulations, but instead a discretionary choice by UMC as administrator.  That it was made both after an effort to contact Plaintiffs, in compliance with the governing documents, and following a reasonable interpretation of the governing documents indicates to the Court that UMC's actions were not a breach of its fiduciary duty.

## CONCLUSION

FOR THE FOREGOING REASONS, Defendants' Motions for Judgment (DN 28; DN 30) are GRANTED.  Plaintiffs' Motion for Judgment (DN 29) is DENIED.  An appropriate order shall issue.